Havlik v. University of Chicago et al. Mr. Dubofsky Thank you, Your Honors. My name is Mark Dubofsky and I represent the appellants in this case. This appeal presents a narrow but significant issue regarding the interpretation of Wisconsin statute section 244.41 subsection 1F and whether it applies to a non-annuitized spousal waiver executed by an agent under a power of attorney. Let's get some things out of the way first. First of all, the plans do not prohibit the spousal waiver to be signed by an agent under a power of attorney. Second, the ERISA statute says nothing about whether a power of attorney agent can sign a spousal waiver that would be valid to meet the requirements of 29 U.S.C. section 1055. Second, there is no binding authority that applies section 244.41 1F to this situation. There is not any authority. That section was part of a uniform power of attorney act that was enacted in Wisconsin and I believe 29 other states. There has yet to be a single case that has ruled on this issue. The only legal argument in this record are the two positions, the two opinions that were presented first by Mr. Agnew and second by Ms. Mackey. Both of them indicated that section 244.41 subsection 1F was not applicable in this circumstance. Mr. Dubofsky, you described the question in this case as how this law applies to a non-annuitized benefit. Where in the record is it clear that Edward and Valerie had elected to receive these benefits as a lump sum rather than the default annuity? Where did Valerie Lyons expressly agree to that? She expressly agreed to that in the beneficiary designation and spousal waiver that was submitted in 1998. That was to, just to be clear, that was to change the way that these benefits would be distributed to remove the default joint and survivor annuity option and to instead have them distributed as a lump sum? Correct. There was no indication at any time that Mr. Lyon, or Dr. Lyon rather, would have elected an annuity. And at the point of time where this occurred, it would have been absolutely absurd for him to have elected an annuity considering both his age and his wife's age. He had amassed 1.2 million dollars in planned benefits and since both of them were elderly and had very short life expectancies, the benefits would never have been received. It was made clear throughout that Dr. Lyon wanted to have a lump sum distribution. And the way, and the beneficiary designation that was submitted in 2019 also made it clear that he wanted a distribution. The trust was made a planned document. It was submitted by the Lyons family. And the trust indicated the money was to be distributed as a lump sum to the 36 grantees. Mr. Dabowski, I'm sorry, but this 1998 document, it says, assuming I'm looking at the right one and you'll tell me if I'm not, it says, each designated beneficiary shall be entitled to take the shared benefits in a lump sum, comma, in equal installments over the life expectancy of such designated beneficiary, and then there's parentheses about trust payments, comma, or in any other manner permitted by law. So what I see there, and perhaps I'm not looking at the right place, but what I see there is an acknowledgement that there are different ways that these benefits could be distributed. But I don't see an express waiver of the joint and survivor annuity, which would have been the default payment method under these 403B plans, nor do I see an election of the lump sum payment definitively to the exclusion of any other payment mechanism. That may be correct, Your Honor, but there was also no indication of any election of an annuity. That would have required the naming of an annuity beneficiary, and as I pointed out, it would have been absurd for the Lions to have elected an annuity at that point in time. I don't disagree with you. A lot of this sounds like it would be absurd, but, I mean, it is what it is. Was the joint and survivor annuity not the default mechanism of payment under these plans, and Valerie Lyons as the beneficiary would receive it? It was the default, but it was made clear going back to 1998 that Dr. Lyon did not want the benefits distributed as an annuity. He identified how it was to be distributed to his grandchildren going back to 1998, and the 2019 beneficiary designation really reiterated his intent to distribute it in that manner. And since the- All right, Mr. Dabowski, maybe I'm missing something here. Excuse me, but from what Judge Tableson just read from the 1998 document, that does not sound to me like an election, and I thought you agreed it is not. Is there some other indication that shows that choice of a lump sum preference? I don't believe there is any other indication that's in this record, so I can't affirmatively say that's the case. Okay, so that sounds pretty critical. What am I missing? I don't think you're missing anything, Your Honor. It's just that we pointed out that very few people take an annuity as a distribution of a 403B plan. It was a lump sum distribution was permitted under the terms of the plan, and all of the evidence points in the direction that that was Dr. Lyon's intent to receive a lump sum, not to receive an annuity. Mr. Dabowski, assuming that you're correct, that the 1998 designation or waiver does request a lump sum payment, does he have to make that election again when he submits another qualified election or change of beneficiary in 2019? I don't think that's clear, but he certainly did make that election in 2019, and no fault was found in the 2019 beneficiary designation as far as the agent, Mr. Davies, signing the beneficiary designation as agent under a power of attorney. But changing gears. Sorry, just another factual question about this. So Mr. Lyon retired long before he died, and so was he receiving these benefits in the form of an annuity or had the lump sum already been paid out? So, again, the record isn't clear, but the tax law required minimum distributions, so he would have been receiving some payments from his plan balance. But rather than rolling the money over into a different type of account, as would have been his right, he chose to leave it in the University of Chicago plan, which was also his right to do. But as he was receiving those payments, and perhaps just to build off of Tableson's question, he was receiving those payments as part of the annuity. That was no? No. It wouldn't have been an annuity. No, or we don't know? I mean, we don't know for certain, but the payments would have been cash payments that would have reduced his existing balance. Now, that wouldn't necessarily have precluded him from annuitizing the remainder later, but it's just obvious that the required minimum distributions would have been paid in cash and not as annuity payments. I guess it's not obvious to me that he received a lump sum payment at all, though. I mean, if he had, in fact, opted into a lump sum payment, he would have gotten it upon retirement. But his estate plan was not for himself to receive a lump sum payment. His estate plan was to skip a generation and pay it out to the grandchildren in order to achieve significant tax savings. And that was made clear both in 1998 and again in 2019. But switching gears somewhat, Section 241.4. I'm sorry. I'm just trying to get my arms around this a little bit. So if he was receiving payments from his retirement fund up until his death, between the time of his retirement up until his death, and I guess the question was whether or not during that stage the plan was dispensing the funds as an annuity, according to kind of the actual calculation of annuity, or whether he was receiving those as periodic payments of some sort of lump sum election. And do you have a view on when that was at that time between the time of his retirement and the time of his death? And the reason I ask that is that as I read the plan, any spousal waiver needs to be filed before the participant's death, right? And so it really matters what the plan was during that time, and I'm wondering what your view is on that. So the plan had the 1998 spousal waiver. Under the tax law at that time, he would have been required to start taking required minimum distributions at age 70 and a half. So when he reached that age, he would have had to have taken a certain percentage of his plan balance, and unfortunately, there's nothing in the record that reveals the whole chronology of his participation in the plan, but that had to have been done at some point. Otherwise, the plan would have lost its tax qualification, and Dr. Lyon would have been taxed on that money. Did he have the option upon retirement to receive the balance of his plan in a lump sum at that time? Absolutely. And what most people do in order to postpone taxation is to roll the money over into an IRA rollover account so that he can continue to draw on it periodically to meet the required minimum distribution. He just made the choice to keep it at the University of Chicago. So the point that I was trying to get to, to change gears a little bit, is with respect to 244.41 1F, and that is that that provision does not even apply because, as we pointed out, the way that the University of Chicago defendants read the plan is that the special power would have been required irrespective of whether it was annuitized because it relates to an employee benefit plan, but because of the word including, which is a term of limitation, and the three canons of construction that we cited in our briefs, there is no reasonable way to read the statute in the way that the University of Chicago defendants are trying to read it. And then the last point on this is that Mr. Davies did have sufficient power under the special powers in the power of attorney that he could have changed beneficiaries and changed any beneficial interest on behalf of Mrs. Lyons. And Section 244.51 would also have given him that power, not to mention the opinion from TIAA's attorney saying that if this arose under Illinois law, it would have been entirely permissible and they would have had to have honored both the change of beneficiary and the spousal waiver. Mr. Dabosky, a question. Do you agree that after Mr. Lyons, Edward's death, there could be no further beneficiary changes under the plan, which is to say these issues all had to be cured before he died? Correct. So I have very little time left, but I would like to reserve it. Thank you. Thank you. Ms. Jones. Good morning, Your Honor. May it please the court. My name is Kim Jones. I represent the University of Chicago defendants in this matter. I would just like to start by clarifying the issue about the lump sum election. There was no lump sum election, as you pointed out. There was a 1998 beneficiary designation which stated who the benefits should be distributed to, to make an election for an optional lump sum benefit under the plan. That's called a qualified election. It's a special designation that would be submitted to the record keeper, and that was not done. I would point out that this was not ever alleged in the complaint. The lump sum election was never alleged in the complaint, was never alleged in district court briefing. This was a new argument that surfaced in the Seventh Circuit briefing. So we would just like to make that point clear that there was no lump sum election. And even Ms. Mackey's opinion, she was the attorney for the trustees, she did not state in her opinion that there was a lump sum election. She stated just because there was an option in the plan to elect a lump sum, that made it not an annuity plan in its entirety. So I just wanted to clear that up. During the time of, even if the 1998 document, the waiver was, can be construed as a lump sum request, during the time of, between the time of retirement and death, what is your position as to whether or not that was a periodic payment of the lump sum, or whether he was being paid on an annuity schedule? I would agree that we don't have evidence of what payments were made during that time, and it would make sense for required minimum distributions to be paid. But that wasn't something that ever came up during the claim and review process, so we don't have a record of that. But that would make sense. It is RMDs, as they're called, are required under the plan. So that likely would be something. So the trustees' arguments seem to be based on a misunderstanding of three fundamental concepts. First, the spousal waiver requirements under ERISA Section 1055 are intentionally strict and cannot be avoided, no matter the circumstances of the surviving spouse. And the intent of the spouse must be made known to the plan administrator through the documents and processes prescribed in the plan itself. Intent cannot be found in extraneous documents or by word of mouth. Second, the language of ERISA Section 1055 is clear on its face which plans it applies to. It says in the statute that it applies to ERISA-governed retirement plans, and then it requires those plans to include a mandatory default annuity benefit to surviving spouses. This term, entire annuity plans or annuity plans in their entirety, was a term that was fabricated by Ms. Mackey, the trustee's attorney. Neither the trustees nor Ms. Mackey have identified any authority or case or statute to support that meaning. Third, agents only have authority granted to them and power of attorney documents. We cannot assume any authority that is not set forth in those forms. And Mrs. Lyons, power of attorney here, did not give her agent the authority to waive her right to those sacred spousal benefits under a retirement plan. The district court's summary judgment decision reflects an accurate understanding of ERISA Section... Is that your position regardless of Section 244.411F? 244.411F. Is that your position regardless of that or because of that? We, that it applies. That it's not sufficient. It is not sufficient under any standard. Anything in a, it's a contract, a power of attorney agreement, and so any authority given to an agent needs to be explicitly set forth in there unless it could qualify under a general grant of authority, which is not the situation here because there was a specific authority section under the Wisconsin statute that applies specifically to joint and survivor annuity benefits. So what about, so let's say we're not in 244.411F land, to follow up on Judge Lee's question, because let's just hypothesize for a moment that this is a lump sum payment. They've opted into a lump sum. There's no joint and survivor annuity left going on. Is it your argument then that 244.55, which is the section on retirement plans, that section lists the powers that an attorney has if he gets a general authority over retirement plans, and those powers do not include waiving your beneficiary designation? That's exactly right, Your Honor. So essentially you need an express grant of authority is what you're arguing to waive a beneficiary designation even if it is a lump sum. That's exactly right. Another rule of statutory construction other than applying plain meaning of the words is applying specific provisions that are relevant over these general grants of authority. So when we look at the type of benefit that's at dispute here and dispute, it's a retirement plan annuity. That is the benefit that is the default automatic benefit under the plan, and it's also a survivor benefit under a retirement plan. Those words are set forth in Section 244.41F of the statute, and that would apply over any other section, especially when you look at the retirement plan section, as you pointed out, Your Honor, and it does not say that there is a general right to waive spousal benefits, which is consistent with the congressional purpose of enacting ERISA Section 1055. It was to provide spousal protection for a stream of income to surviving spouses who are not the wage earners, particularly women, and that cannot just be overridden depending on one particular participant or spouse who does not necessarily need those spousal protections. That kind of raises in my mind another issue, and neither side has brought this up, and so if you don't know the answer to this, that's fine. But if 244.411F requires, imposes a requirement that is more strict than ERISA, does that raise preemption concerns? I don't think it does provide more strict restrictions than ERISA. I think it actually furthers the purpose of ERISA Section 1055. It harmonizes with it because it recognizes that this is a very strict standard under ERISA Section 1055 where to waive a right to spousal benefits, there must be informed, written, notarized consent from the spouse. So it makes sense that if you are going to grant authority to an agent to waive spousal rights, that would also be one of those very specific grants of authority. So I don't see it as conflicting. I see those statutes as harmonizing together. So under that reasoning, take a state that doesn't have a strict requirement, like Wisconsin. Take Illinois. Is it your position that the general power of attorney form in Illinois would not be sufficient to trigger or elect a waiver of spousal beneficiary under ERISA? I would say that if there is a statute such as Illinois that is silent on whether a specific authority needs to be granted to an agent, you still then would have to follow ERISA. That valid spousal waiver would need to be expressed to the plan administrator in some form. So I think you still would need that specific authority granted to your agent to do that for a spouse. Ms. Jones, can I ask you, is there any possibility of settlement in this matter? I mean, there's not like a deep adversity between the parties in terms of the underlying fundamental interests here. We have had settlement discussions, including the Seventh Circuit mediation, but we have not been able to reach any resolution. With regard to the reading, the university's alternative argument that Section 244.411F encompasses all Section 403B retirement plans, I guess it seems to be countered, at least in my mind, to kind of a natural reading of that provision. Because typically, you know, when you say, I want a car including a red one, by red one you mean a car, right? And here it says beneficiary of a joint survivor annuity, including a survivor benefit under a retirement plan. I mean, there are joint survivor annuities that are not part of a retirement plan that you can purchase on your own, right? And so why wouldn't that be the more natural reading as opposed to the more expansive reading that you are advocating here? Our position is that that is a plain reading of the joint and survivor annuity. Which is a plain reading? Our interpretation, the university's interpretation. If you read that statement as a whole, joint and survivor annuity, including survivor benefit under a retirement plan, that is telling you that that includes a joint and survivor annuity benefit under an ERISA-governed retirement plan, because, again, retirement plans are defined in the Wisconsin statute as, for example, 403B. But it wouldn't apply to a retirement plan that is not a joint and survivor annuity. Is that correct? I think it would. But the default benefit under the plans are joint and survivor annuity benefits. No, I understand. And I guess what is the argument that it would, that including – I think you argued in your brief that including is more expansive rather than limiting. And what's the basis for that? Our basis is the way that it's written in giving plain reading to the statutory, the words on the face of the statute. I only have a few minutes left, so I would just like to address the motion for certification to the Wisconsin Supreme Court. We ask that the court deny that motion, as there is no genuine uncertainty here as to any Wisconsin law. As Mr. DeBassi stated, Wisconsin adopted the Uniform Power of Attorney Act, which standardizes processes for powers of attorney across 30 states. So this is not an issue specific to Wisconsin. It wasn't drafted by a Wisconsin legislature for its residents, so we don't need a Wisconsin court to weigh in on that. And also, there's no issue or no concern that this issue would reoccur because this statute has been in existence, the Power of Attorney statute has been in existence since 1979, again, adopted by 30 states, and this issue has never come up before. So there's no concern for it coming up over and over again. So we ask that the court affirm Judge Chang's summary judgment decision. Thank you. Thank you. Thank you. Mr. Hafnerisit? Yes, Your Honor. Thank you, Your Honor. May it please the court, counsel, Mark Hafner, Welch-Pizzi, on behalf of TIAA. TIAA was the record-keeper for the ERISA plan at issue here. It's a defendant on the theory it breached a fiduciary duty, or if it's not a fiduciary, that it breached a common-law negligence duty. And plaintiffs concede that if the power of attorney issue is resolved in their favor, then TIAA has no liability at all. So I have two points. First, TIAA was not a fiduciary under the plan. The sine qua non of fiduciary action is discretionary decision-making authority. TIAA did not have any here and didn't exercise any, despite plaintiffs' allegation it did when it opined on the validity or the scope, I should say, of the underlying power of attorney, providing an opinion is not making a decision. And, in fact, the only case cited by the trustees, Hecker v. Deere, found only in the reply brief, affirms that their fidelity trust was not a fiduciary. It recommended a very limited set of stock plans to Deere, but Deere made the ultimate choice as to what stock plans to include and not include. And the court said, well, you're not a fiduciary in that context, but you didn't make the final decision. And this is in accord with countless cases about accountants and lawyers who provide advice to plans and are not found to be fiduciaries by doing so. Second, there's no cognizable claim for negligence here. First, the claim is preempted. It is just a workaround around ERISA's limitations. The relationship here is purely in the context of ERISA. There is no other aspect to it. And the out-of-circuit case from the Ninth Circuit emphasizes there that it really was outside of the parameters of ERISA. Secondly, on this negligence issue, there's 14 business days to work with here. Trustees have admitted that any corrections had to be made prior to the death of Dr. Lyons, but he only survived 14 business days. TIAA, under a negligence standard, presumptively had a commercially reasonable amount of time to respond to these various new documents that came in in 2019. Not responding within 14 days is not commercially unreasonable, and it's their obligation to show the existence of the duty. They can't do that here. And then finally, trustees below in their reply brief at Docket 87 specifically said that Ms. Lyons had become incompetent by 2019. So to the extent that the solution to this problem was correcting the underlying power of attorney, it was not capable of being done because the principal could not enter a new agency relationship upon being incompetent. Thank you. I request the judgment below be affirmed. Thank you, Mr. Haycock. Mr. Bofsky, you have about a minute for rebuttal. Thank you. Boiled down, the dispute in this case is whether half of Dr. Lyons' planned benefits get paid to his wife's estate or to the grandchildren. The only reason that this is a dispute is because the University of Chicago defendants relied on Section 244.41.1F. So that statute is of prime significance in this case. With respect to TIA's claim, they made a serious mistake. When they denied the beneficiary change designation, they denied it on the ground that it was unsigned. According to an email from University of Chicago counsel to their outside counsel, which is in the record at Havlick 327 to 328, Mr. Klein admitted that TIAA should not have found the change of beneficiary designation not in good order. So the only issue remaining then would have been the validity of the spousal labor. And TIAA delayed more than two years before they even raised that issue. During that period of time, Mrs. Lyons survived an additional year. And whether she could have changed the power of attorney is not the issue. The issue is whether there was sufficient time to open a disabled person's estate. And there was more than sufficient time to do that. Thank you, Mr. Buff. Thank you. The case will be taken under advisement.